[L. A. No. 26173.   In Bank.   Feb. 9, 1961.]

GRANT B. COOPER, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Irving M. Walker, Joseph A. Ball and Herman F. Selvin for Petitioner.

Harold W. Kennedy, County Counsel, and William E. Lamoreaux, Assistant County Counsel, for Respondent.

SCHAUER, J.—In this certiorari proceeding Attorney Grant B. Cooper seeks annulment of an order of respondent superior court adjudging him guilty on two counts of direct contempt and fining him $250 on each count. The events leading to the subject commitments occurred during the second trial, before a jury, of the case of *People* v. *Finch and Pappa*, Los Angeles County Superior Court Number 220164. The charge was murder. On conviction, if the murder was found to be of the first degree, the punishment could be death. Petitioner, acting as attorney for defendant Finch, was twice adjudged in contempt for disobeying an order of the trial court to refrain from stating, in the presence of the jury, an objection to the making by the judge of comments on the comparative credibility of certain witnesses. The judge had, on his own initiative, recalled the jury from their deliberations for the purpose of reading a prepared statement embodying such comments. Copies of the statement had not been furnished to counsel nor had counsel been permitted to participate in its preparation. Petitioner contends that in the circumstances of the case the order that he refrain from stating his objection in the presence of the jury was not a "lawful" order of the court (within the meaning of Code Civ. Proc., § 1209, subd. 5) and hence that it was not a contempt for him to disobey it. The contention is sound and the judgment should be annulled.

Finch and his codefendant were, in October 1959, indicted for the crimes of murder and conspiracy to commit the murder of Finch's wife. The record shows that in a first trial of the two defendants, after the jury had deliberated for a period of eight days, a mistrial was declared on March 3, 1960, for failure to reach a verdict.

The second trial of the murder case commenced on June 27, 1960, and on October 19, 1960, the jury retired and began deliberations which were continuing at the time of the incidents adjudged to constitute contempt. On November 1, 1960, petitioner on behalf of Finch moved in respondent court that the jury be recalled and polled. The motion was denied but the judge stated in open court that he would poll the jury on the following day.

On November 2, 1960, the jury on their own request were returned to the courtroom whereupon they asked the judge to answer a series of questions. The judge answered such questions and then informed the jurors that he could not see why they should not be able to arrive at a verdict. Upon the

conclusion of the judge's remarks petitioner moved the court to declare a mistrial upon the ground that the court's remarks amounted to coercion of the jury and invaded their province. The judge denied the motion and also announced that in view of the questions asked by the jury he would not then poll them.

On November 3, 1960, petitioner again moved in respondent court that a mistrial be declared on the ground that the court's remarks of the previous day constituted oppression and coercion of the jury. The judge denied the motion. Whether any of such motions was well taken we need not determine in resolving the issue before us. The facts as related, however, are relevant parts of the background in which the tenability of the judgment must be ascertained.

On November 4, 1960, after the jury had deliberated for almost three weeks without reaching a verdict, petitioner and other counsel in the case were present in the courtroom at the direction of the judge. The judge, after stationing bailiffs directly behind the seats at the counsel table occupied by petitioner and other defense counsel, although bailiffs had not been so stationed at any other time during the trial, recalled the jury to the courtroom and the following occurred (in the presence of the jurors, the defendants, and counsel):

"THE COURT: . . . Ladies and gentlemen of the jury, under the law and under the Constitution of this state I am entitled to comment on the evidence in this case. I am going to make a few comments and tell you certain things that you may consider and, of course, anything I say is not binding on you, and you may disregard it if you want to. I will just point out various things. If you find that my observations are helpful in assisting you in arriving at a verdict, accept them; if they are not, reject them. Anything I tell you here, of course, is not evidence.

"To my mind the testimony given by the [prosecution] witness John Cody [who had testified, in effect, that he had been employed by the defendants in the murder case to kill Finch's wife] regarding the purpose for which he was employed by the defendants was more believable than the testimony of the two defendants on that subject.

"MR. COOPER [petitioner herein]: If your Honor please—

"THE COURT: Now Mr. Cooper, I don't want a word out of either one of you.

"MR. COOPER: If your Honor please, as a lawyer I have a right to address this court.

"The Court: You don't have a right to say a word when the jury is down here in the process of their deliberations, and I instruct you and Mr. Bringgold [counsel for defendant Pappa] to keep seated and wait until the jury is out to make your objections.

"Mr. Cooper: If your Honor please, I feel your Honor has no right to invade the province of the jury.

"The Court: Mr. Cooper, I hold you directly in contempt.

"Mr. Cooper: Very well, your Honor.

"The Court: I will dispose of the matter as soon as I have instructed this jury.

"Mr. Cooper: Very well, if your Honor please, it is your Honor's prerogative.

"The Court: It certainly is, and I am going to exercise it."

The judge then resumed making his comments on the evidence[1] and after he had finished such comments he again reminded the jurors that they were "the exclusive judges of the credibility of the witnesses and of all questions of fact submitted to" them. He then gave additional instructions

---

[1]Such comments include the following: "To my mind the testimony given by the witness John Cody regarding the purpose for which he was employed by the defendants was more believable than the testimony of the two defendants on that subject. It is my opinion that his version of the transaction was much more reasonable than their version of the transaction; therefore, in applying the rule of law that where the evidence is susceptible of two reasonable interpretations, one pointing to the guilt of the defendants and one pointing to their innocence, it is your duty to adopt that interpretation pointing to the defendants' innocence and reject that pointing to their guilt. It appears to me his testimony is reasonable and their testimony is unreasonable on this subject.

"Likewise, the testimony given by the defendants as to why they came to West Covina on the night of July 18th, 1959, is not reasonable in my opinion. By applying the same standard referred to above, when you weigh the testimony of Marie Ann Lidholm against the testimony of the defendants as to what took place on the night of July 18, 1959 at the Finch residence in West Covina, you are immediately faced with the fact that there are many things she testified to that cannot be reconciled with any theory of innocence.

"Having a decision to make as to whether you are going to believe the defendants or Miss Lidholm as to these events, I believe, should not pose any great problem for you when tested by the instruction I have heretofore given you on how you are to determine the credibility of the different witnesses. If you determine that the defendants are not telling the truth regarding the purpose of their visit to the Finch residence on the night of July 18th, 1959, then they must have a reason for not telling the truth which would be of course that the truth would not establish their innocence, but on the contrary would indicate their guilt.

"The explanation given by the defendant Finch as to the circumstances surrounding the firing of the fatal shot to me does not sound reasonable in any of its aspects, and it appears to me to have been concocted by him in an attempt to justify what is shown by the evidence, in my opinion, to be a willful and deliberate taking of human life."

on the manner of reaching a verdict and asked the jury to again retire and deliberate. Before the jurors had left the courtroom, however, the following occurred:

"[THE COURT:] One thing more before you go, you should not in any way consider in your deliberations the fact that the Court felt it necessary to hold Mr. Cooper in contempt. That has nothing to do with the issues in this case, and it should not be considered by you at all. That is all.

"MR. COOPER: Now, if your Honor please—

"THE COURT: Just a minute, Mr. Cooper—

"MR. COOPER: I have a right to address the Court.

"THE COURT: You do not; while the jury is here you do not have any such right; you sit down.

"MR. COOPER: If your Honor please, I feel your Honor has invaded the province of the jury.

"THE COURT: That is a matter of subsequent argument; I again hold you in contempt, Mr. Cooper. You sit down, and then I will let you say what you want to say. You have no business saying anything in the presence of this jury."

The jury then left the courtroom and petitioner was allowed to present at length his objections to the comments of the court. Petitioner assigned such comments as prejudicial misconduct of the court and moved for a mistrial. The motion was denied.

A week later, after a mistrial had been declared for failure of the jury to reach a verdict, a hearing was held at which petitioner was sentenced to pay a fine of $250 on each of the two counts of contempt or to serve one day in jail for each $100 thereof. The commitment sets out the above quoted proceedings verbatim. A stay was granted pending review, and petitioner filed this application for certiorari.

As petitioner points out, there are no recitals in the commitment of either "Disorderly, contemptuous, or insolent behavior" (Code Civ. Proc., § 1209, subd. 1) or "boisterous conduct, or violent disturbance, tending to interrupt the due course of a trial" (Code Civ. Proc., § 1209, subd. 2). The jurisdictional foundation of the subject order of contempt must therefore be found in one or more acts of "Disobedience of any lawful . . . order . . . of the court" (see Code Civ. Proc., § 1209, subd. 5; § 1211). Petitioner's disregard of the judge's instruction to "keep seated and wait until the jury is out to make your objections" without more would clearly amount to disobedience of an "order . . . of the court." This, petitioner impliedly concedes but, as noted

above, he contends that the order was not a "lawful" one, and hence that it was not a contempt for him to disobey it.

Petitioner argues that the subject order of contempt "necessarily conflicts with" the holding of and the views expressed in *Gallagher* v. *Municipal Court* (1948), 31 Cal.2d 784 [192 P.2d 905], and several decisions discussed therein. Petitioner cites these cases for the proposition that "it is not contempt for a lawyer to seek respectfully to make and press upon a trial court, even though the court does not desire to hear him at that time, some objection or other contention which he deems it necessary to make in the interests of his client. Such conduct on the lawyer's part is not a contempt because, as this Court and the District Courts of Appeal have held, it is not only the lawyer's right, it is his duty, at all times to protect and advance the interests of his client." ▇▇ Petitioner's argument is that "Since it is the lawyer's duty to make his objections and other points in his client's behalf, it must follow that he is entitled to a timely opportunity to make them. From this it necessarily follows that the judge is without power to foreclose that opportunity by any order or admonition to sit down or to be quiet or not to address the court. The power to silence an attorney does not begin until reasonable opportunity for appropriate objection or other indicated advocacy has been afforded."

The just stated proposition advanced by petitioner is undoubtedly sound, but the county counsel on behalf of respondent court argues that it does not apply to the facts of this case because of the assertedly unusual timing of the objections here. No case has been found which passes on the propriety of counsel's interrupting the trial judge's instructions or comments to the jury by interposing objection thereto while they are being given in the regular course of trial[2] and, in fact,

[2]Penal Code, section 1127, provides in general for instructions to juries. Among other things it specifies that "Either party may present to the court any written charge on the law, but not with respect to matters of fact, and request that it be given. . . . Upon each charge presented and given or refused, the court must endorse and sign its decision . . . [and show] by the endorsement what part . . . was given and what part refused." As to the judge's further power in the premises the provision is: "In charging the jury the court may instruct . . . regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case and in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court." The foregoing section is the statutory definition of the power of the court to

no such case would appear to be controlling here. However, respondent urges that even under the unusual circumstances of this case such interruptions are neither proper nor necessary; that to permit them would manifestly disrupt the orderly progress of the trial. Such objections, it is said, should be made after the judge has completed his instructions or comments and outside the presence of the jury (as the trial judge indicated petitioner should do here); interruption of the judge is not necessary to give him "an opportunity to correct the error or false impression" (*People* v. *Cheary* (1957), 48 Cal.2d 301, 316 [16] [309 P.2d 431]) for that can be done by recalling the jury and correcting the instruction or retracting the comment, nor is such interruption necessary to preserve a record for appellate review, for that can be done by making the objection of record after the jury have retired; furthermore, comments on the evidence, like instructions, are "deemed to have been excepted to." (*People* v. *Gosden* (1936), 6 Cal.2d 14, 26-27 [5] [56 P.2d 211].)

The foregoing argument of respondent lacks validity in the circumstances of this case. ■ If it is assumed that petitioner's objections had merit (that the judge was improperly invading the province of the jury by interrupting their deliberations in the manner shown and by making clear to them his own views as to the relative credibilities of the witnesses he mentioned), then the coercive effect of the judge's comments would be particularly great because be made them,

---

comment. (See also the constitutional authorization for such legislation, Cal. Const., art. VI, § 19.)

As to conduct of and communication with the jury following submission of the case to them, section 1128 of the Penal Code provides:

"After hearing the charge, the jury may either decide in court or may retire for deliberation. If they do not agree without retiring, an officer must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor to do so himself, unless by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed or when ordered by the court. . . ."

Section 1138 further specifies that "After the jury have retired for deliberation, *if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law* arising in the case, *they must require the officer to conduct them into court.* Upon being brought into court, *the information required* must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." (Italics added.)

There does not appear to be any provision purporting to authorize the trial judge to send in instructions not given during the regular course of trial or to call in the jury of his own initiative and reopen the trial for further instruction or to inform the jurors of his personal views as to the comparative credibilities of opposing witnesses.

not in the regular course of trial as a summing up at the conclusion of the testimony and counsel's arguments, but after the case had been submitted to the jury and such jury had been deliberating for three weeks. This was the first opportunity counsel had to object to the unusual procedure. An attempt to cure the error by again recalling the jury and instructing them to disregard the comments would be like an attempt to unblow a blown horn. ■ On the other hand, if it is assumed that the objections were without merit because of the assertedly broad power of the judge to comment on the evidence (see *People* v. *Friend* (1958), 50 Cal.2d 570, 576-578 [1-6a] [327 P.2d 97]) even though the case had long previously been submitted to the jury, nevertheless, as petitioner points out and as we held in *Gallagher* v. *Municipal Court* (1948), *supra,* 31 Cal.2d 784, 788 [1], "a mere mistaken act by counsel cannot render him in contempt of court. Even if a legal proposition is untenable, counsel may properly urge it in good faith."

It may be that, as the county counsel says, "It is unheard of [we interpolate, or rare, in the normal course of trial] for counsel to interrupt the judge when the jury is being instructed." But it is also well nigh unheard of for the trial judge, after the jury have deliberated for three weeks in a capital (or any other) case, to recall them and express to them his opinion that the defendants testified falsely and prosecution witnesses told the truth. This recall of the jury was by the judge on his own initiative, i.e., it was not at the request of jurors for further instructions. Whether after the case has been submitted the judge of his own initiative may interrupt the deliberations of the jurors, bring them into court, and address to them his comments on the evidence (in manner and substance which it is here argued were contentious, if not coercive, for the prosecution's case; see *People* v. *Friend* (1958), *supra,* 50 Cal.2d 570, 577 [5]) it is unnecessary to determine in order to decide the issue now before us. ■ It is clear that under the circumstances of the case at bench petitioner, if not required to make, was at least justified in presenting, immediate objection to the hereinabove described procedure followed by the judge, which included, firstly, the interruption by the judge of the jury's deliberations; secondly, the substance of the judge's statement and, thirdly, the manner of its preparation (without participation of counsel) and presentation (without previous notice to counsel or opportunity given them to interpose objections). In view of these unusual circumstances, petitioner must in-

deed have been surprised to discover, when he attempted to protect his client's interest in a respectful manner, that he had instead jeopardized such interest by putting himself in a situation where he was held in contempt in the presence of the jury.

Nothing we say here is to be taken as in any wise impairing the inherent power of a trial court to exercise a reasonable control over all proceedings connected with the litigation before it, a power which, as commented in *Hays* v. *Superior Court* (1940), 16 Cal.2d 260, 264 [1] [105 P.2d 975], "should be exercised by the courts in order to insure the orderly administration of justice." (See also Code Civ. Proc., § 128, subds. 1, 2, 3, 5; Pen. Code, § 1044; *People* v. *Merkouris* (1956), 46 Cal.2d 540, 555-556 [7] [297 P.2d 999]; *Cantillon* v. *Superior Court* (1957), 150 Cal.App.2d 184, 187 [5] [309 P.2d 890].)

The judge, however, should always appreciate that in the trial of a law suit the court is not composed of himself alone. In the procedures of a contested criminal case such as the one which gave rise to the matter at bench our law contemplates that the principal officers of the court shall comprise three categories: the judge, the state's attorney, and the counsel for the defendant. (See *People* v. *Mattson* (1959), 51 Cal.2d 777, 793 [12] [336 P.2d 937]; *Fleming* v. *Hance* (1908), 153 Cal. 162, 166-167 [94 P. 620].) Each of such officers has his role and each in our scheme of things is equally essential to the concept of due process. The judge's function as presiding officer is preeminently to act impartially. It includes the duty to see that each party (always of course within the law) has equal opportunity to advance his claims and to protect his interests. On every issue before the judge and at every stage of the trial the services of counsel are available to aid the judge in reaching an informed conclusion. The duties of counsel for the state and counsel for the defendant necessarily involve protagonism, but the fact that each is opposing the other does not mean that either, any more or any less than the other, is representing the cause of justice. A fair trial is the product of the contributions of the judge and of all participating attorneys.

The very fact that each of opposing counsel is dedicated, within the high obligations of his profession, to protect the interests of his client and at the same time to "maintain the respect due to the courts of justice and judicial officers" (see Bus. & Prof. Code, § 6068) should provide the questing judge

with a ready source of help in his difficult problems. To solicit the advice of counsel would seem particularly desirable for a judge who, in his zeal to discharge in the highest degree his concept of his own duties, contemplates creating an extraordinary situation such as that which gave rise to the present proceeding. ▮ Zeal to see his concept of a proper verdict rendered by the jury certainly should not be so indulged as to unnecessarily create at least an arguable ground for a new trial or reversal in the event of a conviction. ▮ It scarcely seems necessary to point out that when an attorney is presenting an objection or motion in contested litigation he is engaged in a trial, and reasonable opportunity to prepare and present his motion is as fundamental as is the right to counsel (*People* v. *Sarazzawski* (1945), 27 Cal.2d 7, 17 [13, 14] [161 P.2d 934]). ▮ Furthermore, as held in the same case at page 11 [1a], "When a defendant has been denied any essential element of a fair trial or due process, even the broad saving provisions of section 4½ of article VI of our state Constitution cannot remedy the vice and the judgment cannot stand."

▮ The judge here was quick to tell petitioner "*You* don't have a right to say a word when the jury is down here *in the process of their deliberations*" yet the very statement of the proposition suggests that counsel should at least have been earlier afforded the opportunity to pose and argue the question as to whether in the circumstances the judge had any more right than counsel "to say a word [unsolicited, and indicating his view of what verdict should be reached] when the jury is . . . in the process of their deliberations." Even if we assume (and, of course, in this proceeding we do not decide) that the unrequested interruption of the jury's deliberations was not error and that the substance and timing of the statement did not exceed the limits of permissible "comment on the evidence and the testimony and credibility of any witness" (Cal. Const., art. VI, § 19), the fact still remains that on the stipulated record the judge, more than counsel, appears to have set the stage for the contempt adjudications. While we appreciate full well that a trial judge is in the front line of fire and must usually make his decisions swiftly, that was not the fact here. The judge followed a deliberately planned course of action. He did not ask counsel to brief the question or to advise him as to the legal propriety of interrupting the deliberations of the jury on his own motion for the purpose he had in mind. He prepared his "comments"

and embodied them in a written statement. He neither permitted counsel to participate in preparing the statement nor did he furnish them with copies of it. Instead, he stationed bailiffs directly behind the seats at the counsel table occupied by petitioner and other defense counsel, called in the jury, and began to read the statement. The rest of the story has been told.

As respondent says, the facts of this case are unlike those of *Gallagher* v. *Municipal Court* (1948), *supra*, 31 Cal.2d 784, and the District Court of Appeal decisions therein discussed, upon which petitioner relies. But, as in Gallagher, we are convinced that to uphold the contempt order would tend to erode "the fundamental interest of the public in maintaining an independent bar." (P. 795 of 31 Cal.2d.)

The judgment of contempt is annulled.

Gibson, C. J., Traynor, J., Peters, J., White, J., and Dooling, J., concurred.