[Civ. No. 41370. Second Dist., Div. One. June 28, 1974.]

REX K. DᴇGEORGE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

COUNSEL

Rex K. DeGeorge, in pro. per., for Petitioner.

John H. Larson, County Counsel, and Jeffrey H. Nelson, Deputy County Counsel, for Respondent.

## OPINION

**THOMPSON, J.**—On this writ of review we consider the action of the Superior Court of Los Angeles County (Respondent) in adjudicating that petitioner, counsel for plaintiffs in a personal injury action, was guilty of five acts of contempt of court. Viewing the matter in light of *In re Buckley*, 10 Cal.3d 237 [110 Cal.Rptr. 121, 514 P.2d 1201], as directed by our Supreme Court, we conclude that the judgment of contempt is invalid as to count 1 for a procedural defect, invalid as to counts 2 and 3 charging disrespectiful conduct, but valid as to counts 4 and 5 charging misconduct of counsel designed to obtain an unfair advantage at trial.

Petitioner, an attorney at law, represented a group of plaintiffs in a personal injury action arising out of an automobile accident. From the

outset, the proceedings were bitter, with the defense contending that the plaintiffs' claims were fraudulent in nature. Trial commenced to a jury in the latter part of September 1972. On September 29, 1972, petitioner conducted the direct examination of a physician. An objection was sustained to a question asking: "Doctor, in the past, have there been some patients of yours which I represented as an attorney?" Outside the presence of the jury, petitioner was admonished: ". . . prior contact between you and this doctor is totally irrelevant unless some issue is raised as to your contact being wrong or something." Petitioner's first question when the trial reconvened was: "Doctor, have you ever in the past testified in court in a case in which I was a plaintiff?" The trial judge cited petitioner for misconduct and stated, "The matter will be set for hearing upon the conclusion of this trial as to a contempt hearing."

Early in the trial, petitioner accused the trial judge of siding with the defense. On October 2, when the court, out of the presence of the jury, ordered that an exhibit which had not been submitted by either plaintiff or defense be marked as the court's exhibit, petitioner said: "It is part of the prosecution's case, right, your Honor." On October 12, an issue arose in the course of an in-chambers discussion concerning who had made corrections upon a plaintiff's deposition. Defense counsel said: "Well, apparently Mr. DeGeorge [petitioner], or somebody, has marked the deposition . . . ." Petitioner replied: "The deposition—before the Court is ready to condemn me, I'd like to state for the record . . . ." He was cited for contempt for the latter remark.

On October 25, out of the presence of the jury, petitioner, after being warned that any statement for the purpose of placing matter on the record would be treated as contemptuous if untrue, stated: "I will take my chances . . . and I will state for the record that during the course of the cross examination of the doctor, when I asked questions that I, in my humble opinion, feel are very relevant and very damaging to the doctor, the Court moves the chair, looks in the ceiling, or smiles, or makes certain movements of the mouth and lips, which in my opinion makes the thrust and the point that I'm bringing across—it expresses an opinion on the part of the Court that my questions are ridiculous or something along those lines. It's hard to explain it. I say this with due respect to your Honor." The trial judge responded: "You have no respect for his Honor any more than you have for the Superior Court. Go ahead from there Mr. DeGeorge." Petitioner replied: "I respect the Superior Court very much." The trial judge stated: "[T]he Court considers that an outright prevarication . . . ." and denied the statements concerning his actions and expression. He found

petitioner guilty of a direct contempt and fined him $100 on the spot. When petitioner objected, the trial judge recited a number of instances of what he considered misstatements by petitioner.

Despite admonitions against the conduct, petitioner, in the presence of the jury, repeatedly argued with the trial judge after objections to questions asked by him on direct and cross-examination were sustained or when he reasked questions to which objections had been successful. On October 26, after objections on the ground of lack of relevance were sustained to three successive questions asked by petitioner, the court stated: "For the record, Mr. DeGeorge was hawing and laughing after the last sustaining of the objection by the Court . . . . The expression, Mr. DeGeorge, will be disregarded by the jury . . . ." Out of the jury's presence, the trial judge said: "Mr. DeGeorge, for his haws and his laughter to the jury, is again cited for misconduct . . . . Now, we will proceed." The judge denied petitioner's request to make a statement.

In his opening statement, petitioner had referred to the proposition that the defendant had been given a traffic citation as a result of the accident which purportedly had injured petitioner's clients. Evidence of that fact was excluded by the court and the jury was instructed to disregard the matter. On October 31, 1972, during his closing argument, petitioner said; "Now, at the opening statement, I made an error when I referred to a traffic citation that [defendant]—that I was going to prove that he received a traffic citation. I ask you at this time to completely disregard what I said. And I'm not saying that he did or did not. It would not be admissible anyway. I'm asking you to forget that and forgive me for saying it. I should not have mentioned that." The trial judge instructed the jury to disregard the statement. Outside the jury's presence, he cited petitioner for misconduct stating that the matter would be referred to at the end of the case. Petitioner was denied a requested opportunity to make a statement on the record.

After the conclusion of the trial, the court set November 16 as the date on which a judgment and sentences for contempt would be imposed. The trial judge stated: "In the Court's opinion most of these citations on contempt are direct contempt of court for disobeying a court order and there is no explanation that is possible." On November 16, the trial court found petitioner guilty of five counts of contempt.

*Count 1.* The first finding of contempt arises from the incident of September 29 when petitioner, after being admonished that prior contact

between him and the physician witness then being examined was "totally irrelevant," immediately asked, "Doctor, have you ever in the past testified in court in a case in which I was a plaintiff?" The order adjudicating petitioner's contempt recites the background to the question and the admonition. It states that petitioner's conduct was "not due to ignorance but was a deliberate attempt to demonstrate to the Jury that the Court was wrong and discredit the Court's rulings, and thereby gain sympathy for Mr. DeGeorge since he was hampered by the Court." Petitioner was fined $100 on count 1.

*Count 2.* The second finding of contempt concerns the incident of October 12, when petitioner, during an in-chambers conference, in response to a defense statement that "somebody has marked the deposition," declared, "The deposition—before the Court is ready to condemn me, I'd like to state for the record—" The order recites background material to the effect that petitioner had made an improper reference to a plaintiff's poverty in opening statement to which an objection was sustained over petitioner's "vigorous" opposition; that petitioner's ethical conduct was "seriously in question" because of an apparent guarantee by him of a physician's charges; that petitioner had been warned "concerning his conduct"; and that on October 2 he "made a contemptuous remark in a sneering tone of voice, 'I suppose that's part of the Prosecution's case.'" Petitioner was found to be in contempt for the remark of October 12 but not for the earlier statement of October 2. He was fined $100 on count 2.

*Count 3.* The third count of contempt concerns the incident of October 25 when petitioner recited for the record outside of the presence of the jury the purported existence of facial expressions and nonverbal conduct of the trial judge which petitioner claimed tended to prejudice his presentation. The order recites "a concerted campaign [by petitioner] . . . to bait the Court and lead it into error"; that petitioner had accused the trial judge of favoritism to the defense; that petitioner had made an untrue statement at a sidebar conference that the jury could hear opposing counsel; and that petitioner had made other untrue statements. It finds petitioner guilty of contempt for the allegedly untrue statements for the record on October 25 and imposes a fine of $100 on count 3.

*Count 4.* The fourth finding of contempt relates to the incident of October 26 when petitioner "hawed and laughed" after the trial judge sustained objections on the ground of irrelevancy to three successive questions asked by petitioner on examination of a witness. The order recites petitioner's disobedience of an order of the court on September 29; the

repetition before the jury by petitioner on October 16 of an objection to the foundation of evidence which immediately prior to its being made before the jury had been overruled in chambers and explained to petitioner; and that on October 18 petitioner was warned against "challenging the Court's rulings in the presence of the jury." Petitioner was fined $500 for his fourth contempt, recited in the order as "a loud 'Hah' . . . laughing at the Jury, and bury[ing] his face in his hands in an expression of disgust at the Court's ruling, in an obvious attempt to again bring disrepute upon the Court and its rulings."[1]

*Count 5.* The fifth finding of contempt concerns the incident of October 31 when petitioner in closing argument brought to the attention of the jury the fact of the traffic citation purportedly issued to the defendant driver, although evidence of that fact had been barred at trial. The trial judge found the reference to be "a deliberate and calculated attempt to again bring inadmissible evidence to the minds of the Jury, under the guise of apology for his opening statements; and a deliberate attempt to circumvent the Court's ruling." It fined petitioner $500 on count 5.

Petitioner sought a writ of review of the judgment of contempt. In his petition and a supplemental petition, he contends: (1) his conduct did not constitute contempt because the words used by him were respectful and pertinent to matters before the court; (2) subjective interpretations of his actions made by the trial judge are not supported by the record; (3) he was not warned against the conduct found to be contemptuous prior to engaging in the conduct; (4) the "citations" for contempt fail to state "jurisdictional facts," and the evidence does not support the judgment; and (5) the procedure followed by the court denied petitioner due process of law because the trial court did not conduct a hearing on the charges of contempt and because determination of petitioner's guilt or innocence of the charged contempts was heard by the same judge who cited him originally for misconduct and disrespect. Our Supreme Court issued the writ of review. It transferred the matter to us for consideration "in light of *In re Buckley,*" *supra,* 10 Cal.3d 237.

Having so considered the matter at bench, we conclude that the judgment of contempt in the case at bench is erroneous in its adjudication of petitioner's guilt of contempt as recited in counts 1, 2, and 3, and that it is valid in its adjudication of guilt of contempt as recited in counts 4 and 5.

---

[1]We disregard the recital that petitioner buried his face in his hands as bearing on his guilt of contempt because it is not otherwise supported by the record.

A court has inherent power to punish for contempt. (*In re McKinney*, 70 Cal.2d 8, 10 [73 Cal.Rptr. 580, 447 P.2d 972].) A judge has a duty to exercise the power to protect the integrity of the court and the judicial process (*In re Ciraolo*, 70 Cal.2d 389, 394 [74 Cal.Rptr. 865, 450 P.2d 241], but he must do so "with great caution, lest [he] stifle the freedom of thought and speech so necessary to a fair trial under our adversary system." (*In re Buckley, supra,* 10 Cal.3d 237, 249 [110 Cal.Rptr. 121, 514 P.2d 1201], citing *Smith* v. *Superior Court,* 68 Cal.2d 547, 560 [68 Cal.Rptr. 1, 440 P.2d 65].)

Striking the necessary balance to determine the validity of the five counts of contempt here involved thus requires an analysis of the nature of each charge and the evidence in support of it. The charges here are of two categories: expressed disrespect for the court, as charged in counts 2 and 3; and "shystering," attempting to obtain an unfair advantage in a lawsuit by misconduct, as charged in counts 1, 4, and 5. The distinction between those two forms of potentially contemptuous conduct underlies the opinion of our Supreme Court in *Gallagher* v. *Municipal Court,* 31 Cal. 2d 784, 790-794 [192 P.2d 905], the fountainhead of the California law of attorney contempt. *Gallagher* teaches that in dealing with the first category, conduct in the course of a trial that may be interpreted as disrespectful of the court, the judge must be long of fuse and somewhat thick of skin. When used to punish disrespect for the court alone, the contempt power if "not wisely exercised . . . can readily become an instrument of oppression." (*Gallagher* v. *Municipal Court, supra,* 31 Cal.2d at p. 795.) ▮ To avoid undue interference with an attorney's obligation vigorously to represent the interest of his client, counsel should not be held in contempt for disrespectful conduct unless the disrespect is objectively clear and not dependent upon the subjective impression of the judge. (*Gallagher* v. *Municipal Court, supra,* 31 Cal.2d at p. 795.) ▮ Where, however, attorney conduct during trial is of the second category, misconduct designed to misuse the adversary system to obtain an unfair advantage, different considerations are present. Then the trial judge is obligated to use his contempt power "to insure the orderly administration of justice." (See *Cooper* v. *Superior Court,* 55 Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274], citing *Hays* v. *Superior Court,* 16 Cal.2d 260, 264 [105 P.2d 975]; see also *People* v. *Merkouris,* 46 Cal.2d 540, 555-556 [297 P.2d 999]; *Cantillon* v. *Superior Court,* 150 Cal.App.2d 184, 187 [309 P.2d 890].) Hundreds of years of experience with the adversary system operating in the common law tradition are convincing proof of its worth in determining the truth of contraverted facts and the applicability of law. The system can operate only so long as officers of the court, on both sides of

the bench, abide by its strictures. The end of winning cannot justify the means of illegal and unfair advantage lest the system be perverted.

In the matter at bench, the evidence in support of the order does not sustain the trial court's determination that petitioner was in contempt as charged in counts 2 and 3, those dealings with disrespect to the court.

Count 2 finds a contempt in a statement of petitioner made in response to his adversary's in-chambers comment that someone had marked a deposition. Petitioner said: "The deposition—before the Court is ready to condemn me, I'd like to state for the record—" Granted that some of petitioner's earlier statements under similar circumstances may have evinced such disrespect as to justify a citation for contempt, this particular comment does not. ■ No disrespect appears on its face. The statement cannot be fairly construed as charging the court with condemnation of petitioner before he is heard on the issue. The finding thus rests on the subjective basis prohibited in *Gallagher* v. *Municipal Court, supra,* 31 Cal. 2d 784, and must be held insufficient to support a holding of contempt.

Count 3 finds a contempt in a statement of petitioner placing on the record the fact that facial expressions and conduct of the judge may have improperly influenced the jury's reception of positions advocated by petitioner. The statement was not made in the presence of the jury. ■ It is not disrespectful on its face since it does not accuse the judge of deliberately engaging in the expression and action but is totally susceptible of the interpretation that counsel was calling the trial judge's attention to inadvertent action on his part. The sole basis for the finding of contempt is that the trial judge deemed the statement to be untrue. That basis is inadequate under the circumstances. Petitioner, as the representative of his clients, was obligated to protect their interest on the record. He took the only course open to him to do so. His statement for the record was not clearly disrespectful on its face. On those facts, petitioner was entitled to be wrong so long as he made his statement in good faith. (*Cooper* v. *Superior Court*, 55 Cal.2d 291 [10 Cal.Rptr. 842, 359 P.2d 274].) While recitals in the adjudication of guilt of contempt on count 3 refer to other instances of untruthful statements by petitioner, those recitals are in substance conclusionary or subjective in character. Bad faith in the crucial statement cannot be inferred from those recitals alone.

Counts 1, 4, and 5 stand on a different and more substantial footing. Each represents an instance in which petitioner violated the principles governing the conduct of a trial and the ground rules laid down by the

court under circumstances where it may be fairly inferred he was seeking an unfair advantage. All of the conduct occurred in the presence of the jury. In the first instance, charged in count 1, petitioner deliberately asked, in the presence of the jury, a question that had validly been ruled improper in a conference out of the jury's presence. In the second instance, charged in count 4, petitioner, by a loud expression of "Haw" or "Hah" with accompanying laughter, demonstrated in the jury's presence a reaction against valid rulings of the court in a fashion and under circumstances from which the trial court could properly infer that petitioner was seeking jury sympathy by implying that the trial judge was unfair. In the third occurrence, charged in count 5, petitioner, in closing argument, brought to the jury's attention inflammatory matter which had properly been ruled inadmissible. Moreover, he did so under circumstances from which the trial court could properly infer that petitioner was aware of his position as of the moment was a losing one so that his conduct sought either to salvage the situation by unfair conduct or to secure a mistrial.

■ Thus, the conduct charged in counts 1, 4, and 5 constitutes a proper basis for an adjudication of contempt. Our review of the record brought before us in the light favorable to the adjudication, convinces us that the charges are supported by substantial evidence. (*In re Buckley, supra,* 10 Cal.3d 237, 247.) Petitioner argues, however, that the trial court erred in finding him in contempt on the charges specified in counts 1, 4, and 5 because his conduct was "respectful and pertinent," the contempts depend upon subjective determination, and he was not admonished that the conduct in which he engaged would be held contemptuous. The argument is specious. So long as petitioner's contempt lay in his taking unfair advantage by his misconduct, it is irrelevant that he was courteous to the court while doing so. The injury was to the judicial process and not the judge. No subjective conclusion is necessary to the findings of guilt of the contempts charged in counts 1, 4 and 5. Specific acts of misconduct, and not a construction of them, are the bases of the charges. Nor is there a requirement of an admonition in the circumstances here present.
■ While an isolated act of misconduct may not be contemptuous absent a prior admonition (*Thorne* v. *Municipal Court,* 237 Cal.App.2d 249 [46 Cal.Rptr. 749]), the case at bench involves a continuing series of acts of petitioner from which the trial court could properly infer that he had engaged upon a deliberate course of misconduct to take unfair advantage. The record supports the further inference that when petitioner's initial misconduct appeared to have failed, he compounded it with further misconduct unfairly seeking to place inadmissible matter before the jury for the purpose of inflaming it or causing the trial judge to declare a mistrial.

Where such a course of conduct is involved, no admonition that it is wrong is required as a prerequisite to a finding of contempt. A lawyer admitted to practice must be held already to know that such flagrant misconduct is improper.

Finally, petitioner contends that the findings of contempt are erroneous because he was denied a hearing on them and the same judge before whom he committed the misconduct found him in contempt. That contention has merit as to count 1 but not as to counts 4 and 5. ■ "When a contempt is committed in the immediate view and presence of the court . . . it may be punished summarily. . . ." (Code Civ. Proc., § 1211. See 4 Witkin, Cal. Procedure (2d ed.) Trial, § 143, and authority there cited.) Thus, ordinarily no hearing is required in such a direct contempt. In acting on count 1, however, the trial court did not purport to rule summarily. Rather, it stated that it would hold a later hearing to determine whether petitioner was in contempt and thus impliedly found that the misconduct was not irremediable. It never held the hearing but rather passed sentence on count 1 without it. ■ That omission requires the annulment of the judgment of contempt on that count. Tested by the strictures of review of contempt findings, the record reveals a substantial possibility that the action of the trial court misled petitioner to his detriment. It is impossible to conclude that had the court not indicated it would hold a later hearing, petitioner might not have taken appropriate action to purge himself of contempt immediately by apology or otherwise.

No similar defect is present in counts 4 and 5. There petitioner was not misled that there would be a later hearing. His misconduct was not susceptible of explanation or correction. There remains, as to those counts, only the issue of the propriety of the trial judge himself adjudicating the contempt. ■ No impropriety is present. Our Supreme Court, construing *Mayberry* v. *Pennsylvania,* 400 U.S. 455 [27 L.Ed.2d 532, 91 S.Ct. 499], holds that a judge may sit in judgment upon contemptuous behavior that occurs before him subject to the exception that "due process requires a new and impartial judge . . . where there is evidence that the trial judge 'has become so "personally embroiled" with a lawyer in the trial as to make the judge unfit to sit in judgment on the contempt charge.'" (*In re Buckley, supra,* 10 Cal.3d 237, 256.) Where the judge sits in judgment of a contempt that occurred before him, the adjudication will be annulled for that reason only if the reviewing court determines from the record before it that the judge was so personally embroiled in the matter that he should not have heard it. (*In re Buckley, supra,* 10 Cal.3d

at p. 256.) Our review of the record reveals no such impermissible embroilment.

Unquestionably, in the course of a trial of over a month, the trial judge on occasion expressed irritation with petitioner. On at least one occasion, the judge expressly stated that his temper was being strained. In one instance at an inchambers conference, he referred to petitioner as "Mr. so and so." Petitioner was repeatedly admonished for misconduct. Had the judge's irritation been triggered by disrespect for the court involving "fighting words" and had petitioner been adjudicated in contempt for that disrespect, the record might be construed as establishing that the judge was so personally embroiled as to be disqualified from acting on the contempt. (See *In re Grossman,* 24 Cal.App.3d 624, 632 [101 Cal.Rptr. 176].) In that situation, it could be inferred that the trial judge's perspective was so affected by his involvement that he was "personally embroiled." Here, however, petitioner's contempt as charged in counts 4 and 5 was not directed at the judge personally and it did not involve "fighting words." Here also most of the trial judge's irritation was expressed not in relation to petitioner's conduct, which was disrespectful, but rather in response to petitioner's misconduct in seeking an unfair advantage over his opponent. The record thus supports the inference that the judge's involvement was one to protect the process of a fair trial and not personal. The contrary inference is not impelled by the two improper citations for contempt in the nature of disrespect. Neither the conduct there cited nor other disrespectful action of petitioner was substantially more directed toward the judge personally than was the conduct considered by our Supreme Court in *Buckley.* Thus, the record does not compel the conclusion that the trial judge had become so prejudiced against petitioner as to disqualify him from acting to protect the processes of trial.

We thus conclude that the judgment of contempt is valid as to counts 4 and 5 and invalid as to counts 1, 2, and 3. The judgment is annulled as to those latter counts and sustained as to counts 4 and 5 only.

Wood, P. J., and Hanson, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 28, 1974. Mosk, J., was of the opinion that the application should be granted.