[No. B083658. Second Dist., Div. Five. Apr. 29, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE L. PONCE et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.(A.)-III.(D.) and the heading to part III.(E.) and parts III.(F.)-III.(G.).

COUNSEL

Richard Jay Moller and Fay Arfa, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Sally P. Brajevich, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Defendants, Jose L. Ponce and Efrin Villalobos, appeal from judgments entered following a joint jury trial which resulted in their convictions of second degree robbery (Pen. Code,[1] § 211); the jury also finding Mr. Ponce was personally armed with a knife. (§ 12022, subd. (b).) Defendants contend the court committed various evidentiary and instructional errors, erroneously denied a motion for mistrial, and prejudicially erred by communicating ex parte with the jury. They also contend the prosecutor engaged in prejudicial misconduct. The Attorney General contends defendants are each entitled to one less day presentence credit. We modify the judgments.

## II. FACTS

Viewed in accordance with the usual rules on appeal (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909; *People v. Bean* (1988) 46 Cal.3d 919, 932 [251 Cal.Rptr. 467, 760 P.2d 996]), the evidence established that at approximately 7 p.m. on June 26, 1993, Jorge Vela was walking to his car in Los Angeles with his family when Mr. Ponce and Mr. Villalobos approached. Mr. Vela felt something in his stomach and back. Mr. Vela saw something metallic when he looked at his stomach. He was afraid and believed defendants both had knives. Mr. Ponce ordered Mr. Vela to give up his "things." Mr. Ponce yanked three gold chains from his neck. Mr. Villalobos told Mr. Vela not to say anything. Mr. Villalobos took Mr. Vela's wallet. Mr. Vela saw both defendants' faces. Defendants ran to an eastbound-facing double-parked car.

At approximately 8 p.m., Los Angeles Police Department Officers Jose Rios and Al Lopez were driving an unmarked car near the robbery scene. The two officers saw defendants run towards the double-parked car and dive through the windows. After the car was driven five or six blocks, Officer

---

[1] Unless otherwise indicated, all future statutory references are to the Penal Code.

Rios stopped it because of a seat belt violation. Mr. Ponce was driving, Mr. Villalobos was in the front passenger seat, and Salvador Hernandez was in the rear seat of the automobile. When Officer Rios approached the car he saw a thick wallet four inches by eight inches on the floor of the car between the front seats. Officer Rios asked defendants and Mr. Hernandez about the wallet. Both Mr. Ponce and Mr. Villalobos said they did not know anything about it.

Officer Rios determined the wallet contained property from three persons and believed it to be stolen. The wallet contained: Mr. Vela's California driver's license, Social Security card, and "Nix" check cashing card; a Dearden's credit card; a checkbook; a Kaiser Permanente card; a citizen identification card; Steven M. Greco's Versatel and phone cards as well as a check; a check to Aleman Cleaning Service; several business cards; and Juan Segueros Fuentes's California identification. Gold chains were also recovered from the car.

On July 9, 1993, Mr. Vela went to the police station to recover his property, fill out a police report, and make a photographic identification. Mr. Vela positively and unequivocally identified defendants as the perpetrators. Mr. Vela also positively identified the defendants at a preliminary hearing and at trial. Mr. Vela had between $100 and $120 in his wallet when it was taken and the money was never recovered.

III. DISCUSSION

A.-E.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

■ Defendants' contentions the court erred in preventing defendants from presenting a defense theory they were "framed" and in admonishing the jury there was no evidence in the record supporting that theory are meritless.

1. *Facts*

In closing argument, Mr. Villalobos's counsel argued: "[W]e know that there is what they say circumstantial evidence. You know the car, the wallet, and the male Hispanics, but we want you to be open-minded about this case. Because [Mr. Villalobos] and Mr. Ponce have been—so-to-speak, they have been framed. Because there has been some testimony about the people that committed this crime, and we feel that the descriptions that were given in this case show different people."

---

*See footnote, *ante*, page 1380.

During rebuttal argument, the prosecutor later argued: "Well, I submit to you that . . . property was found in that wallet because these defendants were on a crime spree. They were robbing people. And when they rob people, they took what they wanted—the money, the chains, the good stuff—and they shoved the rest of it into that wallet until they could get rid of it at a later time. [¶] It's an hour later. Don't you think that in that hour period when they are in that same area, that it's more likely than not that they can commit probably two, three robberies?" Defendants objected to this argument and the objection was overruled.

The jury was excused and defendants moved for a mistrial based on prosecutorial misconduct in referring to a crime spree and other offenses. The trial court heard argument and denied the mistrial motion. The trial judge additionally stated he thought the phrase "crime spree" was "a little heavy handed" and indicated he would consider whether an instruction is necessary. At that time, the prosecutor also asked the court for an instruction concerning Mr. Villalobos's counsel's use of the word "framed" because there was no evidence to support that theory of defense. The court stated it would consider an instruction for each.

When proceedings resumed, the court allowed counsel to review its proposed jury instructions advising the jury there was no evidence defendants were "framed" or that they went on a crime spree. Mr. Villalobos's counsel then objected to the court advising the jury there was no evidence defendants were "framed." She argued: her use of "framed" was a play on words; she is allowed to allege police misconduct which is a common defense; the court was depriving her of the defense that Mr. Villalobos was framed; she had the right to argue all reasonable inferences from the facts; "you don't see [this defense] in the evidence, but it's proper argument on behalf of the defense, and the prosecution has a different kind of obligation"; and there is no case authority saying it is defense misconduct to say "the police have framed the defendant."[2] The trial judge found there was no evidence in the record of a "deliberate attempt to frame the defendants."

---

[2]The following colloquy then occurred: "[Mr. Villalobos's counsel]: No. Basically, number one, with respect to—you'll find that police misconduct is a common defense, and what I did in this picture was hold up a picture of a six-pack, clearly showing him in a frame and saying that he'd been framed. It was a play on words and that's all it was, and I'm allowed to allege police misconduct. It is very common. It is a common defense. [¶] The court: I think police misconduct in the context that you could argue—well, first of all, there is no—both sides made references to some misconduct with respect—or prosecution indication there was no suggestion by the police. You indicated there was some—it's not clear what you were saying in terms of police misconduct. I had already determined the 402 hearing there was no misconduct. [¶] In any event, I think the reference to being framed, as the prosecution's pointed out, did go too far. You had your record on that. [¶] [Mr. Villalobos's counsel]: Yeah. I would also—I would like to say you're depriving me of a defense and the right to argue all

The trial court instructed the jury, in relevant part: "The final summation in a case is one of the high points of a trial for an attorney. It is the opportunity to marshal the facts and truly advocate on behalf of the clients. And I think you heard very able argument—closing argument from all counsel in this case. [¶] However[,] sometimes an attorney in zeal and passion of advocacy may go a little bit too far. In this case[,] I believe the defense has argued that the defendants were here being framed. I instruct you that there is no evidence of any attempt to frame the defendants. You will weigh the credibility of the witnesses, but I do not believe the evidence supports an attempt to deliberately frame the defendants. [¶] With respect to the prosecution's allegation of a crime spree on the night of Mr. Vela's robbery, I instruct you that there is no evidence of any crime spree. Further, you are not to consider evidence—and I will have further instruction on this later—of any other possible offenses in assessing the defendant's guilt or lack thereof on the crime—relating to the crime of robbery. It is that charge which is before you for your determination and only that charge."

---

reasonable inferences. That is basically my defense; that he was framed by the police and I think that— [¶] The court: I think the— [¶] [Mr. Villalobos's counsel]: I— [¶] The court: No evidence of deliberate attempt to frame the defendants. [¶] [Mr. Villalobos's counsel]: Judge, you don't see it in the evidence but it's proper argument on behalf of the defense, and the prosecution has a different kind of obligation. They have a higher obligation not to inflame the jury with uncharged offenses which they did by, number one, saying that Mr. Ponce was wanted for a stolen car. [¶] There was—it was—you can't bring that in during argument of the—it was not brought in during the trial. [¶] Number two, with respect to Fuentes, I could have argued that Mr. Vela was lying and that that's why he didn't go to the police because he had someone else's identification in his wallet. I—but I didn't because I certainly wouldn't impeach a witness with a felony perjury if there was no evidence for it. [¶] I think that being framed is a pun on words, and I didn't—and I think that it's totally unfair to do that; to take that out of my argument. It was a pun on words, it was a play on words, and it was—it showed the defendants in a picture frame. [¶] The court: The only reason it's a play on words is to suggest that there was a deliberate inference, and I think it—evidence was offered by Mr. Vela to frame an incorrect—deliberately incorrectly identify the defendants. The jury will consider the credibility of witnesses in concerning whether or not the identification is correct. [¶] [Mr. Villalobos's counsel]: I don't see any grounds for, and I believe that you'll look, there is no—ever, ever there has not been one case in the—in the entire, in all of judicial opinions that have found defense misconduct by saying the police have framed the defendant. There is nothing there. There is no authority for what the Court's doing at all. [¶] The court: As I recall the argument and suggestion was it wasn't limited to the police, it was a suggestion certainly Mr. Vela wanted to frame them, he wanted to get it over with. He was trying to deliberately—and I think that suggestion was there. [¶] [Mr. Villalobos's counsel]: There is—there is no— [¶] The court: Counsel, we have your arguments and I think you're getting repetitive. [¶] [Mr. Villalobos's counsel]: —for what the Court is doing. [¶] The court: People. [¶] [Mr. Villalobos's counsel]: And, secondly, I just think it's—well, with respect to the crime spree, I agree, but there's been some that—it's totally unfair for the Court to do this. [¶] The court: People, anything? [¶] [Deputy district attorney]: I believe the record is clear. Submitted."

## 2. Analysis

■ The trial judge had a responsibility to correctly instruct the jury and limit argument to defenses supported by substantial evidence. A judge must instruct on the law applicable to the facts of the case and a defendant has a right to an instruction that pinpoints the theory of the defense (*People* v. *Mincey* (1992) 2 Cal.4th 408, 437 [6 Cal.Rptr.2d 822, 827 P.2d 388]; *People* v. *Mickey* (1991) 54 Cal.3d 612, 697 [286 Cal.Rptr. 801, 818 P.2d 84]; *People* v. *Benson* (1990) 52 Cal.3d 754, 806 [276 Cal.Rptr. 827, 802 P.2d 330]; *People* v. *Wright* (1988) 45 Cal.3d 1126, 1137 [248 Cal.Rptr. 600, 755 P.2d 1049]; *People* v. *Lee* (1987) 43 Cal.3d 666, 675, fn. 1 [238 Cal.Rptr. 406, 738 P.2d 752]; *People* v. *Sears* (1970) 2 Cal.3d 180, 189-190 [84 Cal.Rptr. 711, 465 P.2d 847]); however, a trial judge must only give those instructions which are supported by substantial evidence. (*People* v. *Barton* (1995) 12 Cal.4th 186, 195, fn. 4 [47 Cal.Rptr.2d 569, 906 P.2d 531]; *People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1].) Further, a trial judge has the authority to refuse requested instructions on a defense theory for which there is no supporting evidence. (*People* v. *Mincey,* *supra,* 2 Cal.4th at p. 437; see also *People* v. *Memro* (1995) 11 Cal.4th 786, 868 [47 Cal.Rptr.2d 219, 905 P.2d 1305] [trial court properly refused defendant's request on the accuracy of the identification because no witness identified defendant as the killer]; *People* v. *Bacigalupo* (1991) 1 Cal.4th 103, 125 [2 Cal.Rptr.2d 335, 820 P.2d 559] revd. on other grounds (1992) 506 U.S. 820 [121 L.Ed.2d 5, 113 S.Ct. 32] [trial court properly refused duress instruction because defendant's vague and unsubstantiated statement to an officer did not constitute substantial evidence threat of death to defendant and his family was eminent]; *People* v. *Morris* (1991) 53 Cal.3d 152, 211 [279 Cal.Rptr. 720, 807 P.2d 949] [trial judge properly refused to instruct on second degree murder because defendant had advanced no theory consistent with evidence allowing jury to convict him of such an offense].) Further, a trial judge has a duty and right to exercise reasonable control over criminal proceedings including argument to the jury. The United States Supreme Court has repeatedly expressed its view that a criminal trial judge has a duty to control the argument of both sides. In *United States* v. *Young* (1985) 470 U.S. 1, 10-11 [84 L.Ed.2d 1, 9, 105 S.Ct. 1038], the United States Supreme Court noted: "We emphasize that the trial judge has the responsibility to maintain decorum in keeping with the nature of the proceeding; 'the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct.' [Citation.] The judge 'must meet situations as they arise and [be able] to cope with . . . the contingencies inherent in the adversary process.' [Citation.] Of course, 'hard blows' cannot be avoided in criminal trials; both the prosecutor and defense counsel must be kept within appropriate bounds. [Citation.]" Similarly, in *Herring* v.

*New York* (1975) 422 U.S. 853, 862 [45 L.Ed.2d 593, 600, 95 S.Ct. 2550], the United States Supreme court held: "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment. [¶] This is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He [or she] may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He [or she] may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. In all these respects [she or] he must have broad discretion. [Citations.]" Citing the foregoing language in *Herring*, the Ninth Circuit has described the discretionary powers of trial judges to control argument as "broad." (*United States* v. *Guess* (9th Cir. 1984) 745 F.2d 1286, 1288.)

Similarly, California law requires a judge to control proceedings including the argument of counsel to the jury. Section 1044 states in clear mandatory language: "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." In *People* v. *McKenzie* (1983) 34 Cal.3d 616, 626-627 [194 Cal.Rptr. 462, 668 P.2d 769], Associate Justice Mosk emphasized the inherent as well as the statutorily imposed obligation upon trial judges to control proceedings as follows: "The court has the authority ' "to take whatever steps [are] necessary to see that no conduct on the part of any person obstruct[s] the administration of justice" ' [citation], to 'maintain "the dignity and authority of the court" [citation] and to summarily punish for acts committed in the immediate view and presence of the court when they impede, embarrass or obstruct it in the discharge of its duties [citations].' [Citation.] It has further been noted that the trial judge 'has the responsibility for safeguarding both the rights of the accused and the interest of the public in the administration of criminal justice. The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his or her initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial.' [Citations.]" In *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274], the mandatory nature of the duty of a trial judge to maintain control over proceedings was described as follows by former Associate Justice Schauer:

"Nothing we say here is to be taken as in any wise impairing the inherent power of a trial court to exercise a reasonable control over all proceedings connected with the litigation before it, a power which, as commented in *Hays* v. *Superior Court* (1940)[] 16 Cal.2d 260, 264 . . . , 'should be exercised by the courts in order to insure the orderly administration of justice.' [Citations.]" The foregoing responsibilities and duties are "inherent as well as statutory." (*People* v. *Cox* (1991) 53 Cal.3d 618, 700 [280 Cal.Rptr. 692, 809 P.2d 351]; *People* v. *Melton* (1988) 44 Cal.3d 713, 734 [244 Cal.Rptr. 867, 750 P.2d 741].)

One of the areas where a trial court has the responsibility to exercise its discretionary powers is in connection with improper argument by the defense as well as the prosecution. In *People* v. *Modesto* (1967) 66 Cal.2d 695, 707-708 [59 Cal.Rptr. 124, 427 P.2d 788] disapproved on another point in *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383, footnote 8 [66 Cal.Rptr. 724, 438 P.2d 372], former Associate Justice Tobriner discussed the duty of a trial judge to prohibit argument by defense counsel when there was no substantial evidence to support a self-defense theory where the accused had not testified as follows: "The trial court did not, however, permit the defense to suggest to the jury that, as defendant stopped his car, he saw a mysterious assailant attacking [one of the decedents] in front of her house; that he took the sledgehammer from his trunk in order to fight off the intruder; and that the culprit fled before the defendant could reach the scene of the attack. If the record contained any evidence whatever tending to support such a theory of what transpired, we would of course conclude that the trial court committed gravely prejudicial error in depriving defendant of the opportunity to present that theory to the jury. [¶] A careful examination of the entire record, however, reveals no evidence which might furnish support for the hypothetical argument constructed by defendant's attorney. In ruling the argument improper, the trial judge was simply carrying out his duty to 'control all proceedings during the trial, and to limit . . . the argument of counsel to relevant and material matters' (. . . § 1044) by confining counsel's factual argument to the record. [¶] Defendant correctly states that his failure to take the stand should not be held to prevent his attorney from drawing all inferences fairly supportable by evidence appearing in the record; we hold only that defendant's failure to take the stand does not entitle his attorney to engage in purely speculative argument, substituting his own testimony for that of the defendant in order to insulate the theory of the defense from the scrutiny of cross-examination." (Italics & fn. omitted.) In other circumstances, the California Supreme Court has upheld the exercise of discretion by trial judges which have limited the right of counsel for the accused to present factually unsubstantiated contentions to a jury. For example, in *People* v. *Stankewitz* (1990) 51 Cal.3d 72, 102 [270 Cal.Rptr. 817, 793 P.2d

23], defense counsel attempted to argue that three potential prosecution witnesses were available to testify. The deputy district attorney objected. Our Supreme Court held: "The prosecutor's objection was properly sustained. Nothing in the record indicated whether [the three potential witnesses] were available. It is axiomatic that counsel may not state or assume facts in argument that are not in evidence." (*Ibid.*) In *People* v. *Farmer* (1989) 47 Cal.3d 888, 920-921 [254 Cal.Rptr. 508, 765 P.2d 940], our Supreme Court held that a trial judge could prohibit defense counsel from reading from an article when the contents were not revealed prior to argument. Additionally, the *Farmer* court discussed whether the defense attorney could read to the jury from an argument of the prosecutor in a related case. Our Supreme Court held: "A prosecutor must perform his [or her] function with the highest degree of impartiality. In addition, the defense is typically given wide latitude in its closing argument. These two principles, defendant suggests, made it error to refuse to let him read the prosecutor's comments in the [related] trial to the jury. We disagree. As noted above, it is improper to state facts that are not in evidence during summation, with certain narrow exceptions such as commonly known matters. [Citation.] What the prosecutor argued in another trial is not a proper subject for closing argument. This is true not only because it is not a fact in evidence, but also because the jury is unaware of the context of the quoted argument and may thus be misled." (*Id.* at pp. 922-923; accord, *People* v. *London* (1988) 206 Cal.App.3d 896, 909 [254 Cal.Rptr. 59] [trial judge properly precluded defense counsel from reading irrelevant newspaper articles to the jury]; *People* v. *Mendoza* (1974) 37 Cal.App.3d 717, 724 [112 Cal.Rptr. 565] [trial judge properly prohibited defense counsel from reading newspaper clippings involving irrelevant hearsay].)[3]

 In the present case, there was no substantial evidence of an effort by a single police officer to falsely accuse or assist a witness in inaccurately identifying defendant as the perpetrator of the offense. Moreover, there was no substantial evidence that two or more police officers entered into what amounted to a conspiracy to obstruct justice by falsely accusing defendants of the crimes which resulted in convictions. The fact that defendants were contending they had been misidentified or there was a reasonable doubt as to guilt was not substantial evidence of misconduct by law enforcement officials amounting to an effort to "frame" Mr. Villalobos or Mr. Ponce. The

---

[3]Because of our resolution of the issues as discussed in the body of the opinion, we do not discuss the power of a trial judge to comment on the evidence. (*Quercia* v. *United States* (1933) 289 U.S. 466, 469 [77 L.Ed. 1321, 1324-1325, 53 S.Ct. 698]; *United States* v. *Spencer* (9th Cir. 1992) 981 F.2d 1083, 1088; Cal. Const., art. VI, § 10; *People* v. *Proctor* (1992) 4 Cal.4th 499, 540-541 [15 Cal.Rptr.2d 340, 842 P.2d 1100] affirmed *sub nom. Tuilaepa* v. *California* (1994) 512 U.S. __ [129 L.Ed.2d 750, 114 S.Ct. 2630]; *People* v. *Melton, supra*, 44 Cal.3d at p. 734.)

reality that there were inconsistencies in Mr. Vela's testimony or that of the officers did not amount to substantial evidence of an attempt by police officers, individually or collectively, to falsely accuse defendants of the robbery. In the absence of such evidence, the trial court had a duty and right to preclude defense counsel from pursuing such argument. Further, the trial judge acted within his discretion in instructing the jury there was no evidence to support the inflammatory allegation that the police had intentionally falsely accused defendants. Trial judges have the duty to responsibly and fairly control the proceedings to prohibit argument which is not supported by substantial evidence. In *McKenzie*, Associate Justice Mosk emphasized that the adversary nature of criminal proceedings did not relieve the trial court of its " 'obligation' " on its own initiative " 'at all appropriate times and in an appropriate manner' " to take action to " 'promote a just determination of the trial.' " (*People* v. *McKenzie, supra,* 34 Cal.3d at pp. 626-627.) Former Associate Justice Tobriner referred to the right to control argument by defense counsel as a "duty" when there was no evidence to support a particular theory of exculpation. (*People* v. *Modesto, supra,* 66 Cal.2d at p. 708.) In the present case, the trial judge faithfully complied with his duty and obligation in instructing the jury as he did.

F., G.*

. . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The judgments are modified to reflect 243 days of actual custody credit, and 120 days of conduct credit for a total of 363 days of presentence credit, and as modified, are affirmed.

Armstrong, J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied May 13, 1996, and appellants' petition for review by the Supreme Court was denied July 31, 1996.

---

*See footnote, *ante,* page 1380.