Filed 12/12/22 P. v. Jones CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B311533 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA076067) |
| v. | |
| DANIEL PAUL JONES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa Mangay Chung and Daviann L. Mitchell, Judges. Affirmed.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and J.

Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

While serving a life sentence for murder and other offenses, appellant Daniel Paul Jones bit a correctional officer's hand during a struggle with several officers who were trying to restrain him in order to search his cell for contraband. A jury found appellant guilty of one count of battery on a non-confined person by a prisoner, and he received a third-strike sentence of 25 years to life in prison.

On appeal, appellant challenges both his conviction and his sentence. Initially, he asks that we review the sealed transcript containing the trial court's review of correctional officer personnel files performed under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). Additionally, he asserts the trial court erred in: (1) excluding proffered testimony regarding certain officers' prior misconduct; (2) denying a mid-trial continuance to allow him to secure the presence of certain witnesses; and (3) refusing to instruct the jury on excessive force and self-defense. He further contends the cumulative prejudicial effect of these alleged errors warrants reversal. As for his sentence, appellant contends the court abused its discretion in denying in part his motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) to strike his prior strike convictions. Alternatively, he maintains his sentence is

unconstitutionally excessive.  As explained below, we find no reversible error and therefore affirm.

## BACKGROUND

### A. The Information

The Los Angeles County District Attorney's Office charged appellant with three counts of battery on a non-confined person by a prisoner (Pen. Code, § 4501.5), naming correctional officers Miguel Enriquez, Felipe Carreon, and Rolando Rosas as the respective victims.  It further charged appellant with one count of custodial possession of a weapon (*id.*, § 4502, subd. (a)).  The information also alleged that appellant had suffered four prior convictions qualifying as strikes under the "Three Strikes" Law (*id.*, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and that one of those convictions was for murder (§§ 667, subd. (e)(2)(C)(iv)(IV) & 1170.12, subd. (c)(2)(C)(iv)(IV)).

### B. The Evidence at Trial

#### 1. The Prosecution's Case

The prosecution called several correctional officers, including Officers Enriquez, Rosas, and Carreon, and they testified to the following.  Appellant was an inmate at California State Prison, Los Angeles County.  On January 30, 2019, Sergeant Bryan Perez received information that appellant was suspected of smuggling narcotics through the mail, and that this contraband could be in his cell.  Sergeant

3

Perez provided the information to Officer Ernest Gollette and instructed him to have appellant's cell searched. Officer Gollette asked Officers Enriquez and Carreon to assist him.

The officers proceeded to the area of appellant's cell and located him outside the supply room, which was on the upper tier. Officers Gollette and Carreon approached appellant, while Officer Enriquez trailed behind, instructing other inmates to return to their cells. Officer Gollette ordered appellant to put his hands behind his back so the officer could place him in handcuffs. Appellant said, "Okay," but did not comply, and instead attempted to go into the supply room.

Officer Gollette grabbed appellant's arm, but appellant tried to break away by twisting and turning his body, while the officers repeatedly instructed him to stop resisting and allow them to cuff him. Officer Carreon approached to assist and attempted to restrain appellant. Officer Enriquez also arrived to assist, and after unsuccessfully attempting to bring appellant's arm behind his back, pushed appellant down from his shoulders in order to get him on the ground, which was safer. Appellant fell forward and his head hit the ground, but he continued to resist the officers.

Officers Rolando Rosas and Sisak Sam Misirian joined in to help restrain appellant. As the struggle continued, appellant struck the three officers named in the information in various ways. As he twisted on the floor, appellant began kicking his legs wildly in all directions, eventually hitting Officer Rosas's leg. Officer Enriquez held onto appellant's right hand just below appellant's head, when appellant

4

tucked in his chin and bit Officer Enriquez's right hand, leaving a bite mark. Finally, appellant was moving his head up and down, and as he moved it up again, the back of his head hit Officer Carreon's nose.

Ultimately, the officers succeeded in pulling appellant's arms behind his back. Officer Gollette placed handcuffs on appellant's wrists, and Officer Misirian placed restraints on his legs. Officer David Montoya then searched appellant's cell and discovered a manufactured weapon inside his mattress.

At trial, Sergeant Christopher Geiwitz testified as an expert on correctional officers' use of force. Sergeant Geiwitz testified that in normal circumstances, officers are not allowed to touch inmates. He explained that when dealing with resisting inmates, officers are trained to handle the incident as quickly as possible, with minimal reliance on the use of force. When asked about the procedures surrounding the search of an inmate's cell, Sergeant Geiwitz testified that the inmate is removed from his cell and placed in handcuffs for the search to take place.

## 2. The Defense's Case

The defense called or recalled several officers, including Officer Carreon.[1] As relevant here, when appellant's counsel asked Officer Carreon if either he or

---

[1] Appellant represented himself through most of the trial, but ultimately allowed his standby counsel to assume his representation during the defense case. Appellant did not testify.

Officer Gollette announced their presence before "getting to [appellant]," the officer replied that they did not. Officer Carreon also testified, however, that either he or Officer Gollette had asked appellant to approach them or otherwise addressed him before Officer Gollette grabbed appellant's arm. After refreshing his recollection with his written report, Officer Carreon testified that before grabbing appellant, Officer Gollette had told appellant to turn around and submit to handcuffs.

After Officer Carreon testified that he had not seen any contraband on appellant during the incident, appellant's counsel confronted him with his preliminary hearing testimony, in which he stated that after Officer Gollette grabbed appellant's arm, appellant tried to put "some pieces" into his mouth. Officer Carreon did not recall saying this, but did not dispute that this was his prior testimony, and could not explain the difference between that testimony and his current one. Similarly, Officer Carreon testified in response to questioning that from the time appellant fell to the ground until he was handcuffed, appellant never got on his knees. But he confirmed that at the preliminary hearing, he testified that appellant's head struck his nose after appellant "f[ell] to his knees."

### C. The Jury's Verdict and the Trial Court's Sentence

Following trial, the jury found appellant guilty of one battery charge, relating to the biting of Officer Enriquez, and acquitted him of the weapon-possession charge. The jury was unable to reach verdicts on the charges relating to

6

Officers Rosas and Carreon, and the trial court declared a mistrial as to those counts and later granted the prosecution's motion to dismiss them.

At a bifurcated proceeding, appellant admitted the prior strike allegations. At sentencing, the trial court granted in part appellant's *Romero* motion, striking two of his prior strikes and declining to strike the remaining two, including the murder conviction. The court then sentenced appellant to 25 years to life in prison under the Three Strikes Law. Appellant timely appealed.

## DISCUSSION

*A. Ruling on Pitchess Motion*

Initially, appellant asks that we review the sealed record of the trial court's in-camera *Pitchess* proceeding for any error. The Attorney General does not object and, having done so, we discern no error.

### 1. Background

Before trial, appellant, who was then representing himself, filed a *Pitchess* motion, seeking disclosure of personnel records concerning Officers Gollette, Carreon, Enriquez, Rosas, and Montoya. In his accompanying declaration, appellant asserted that the first four officers used unnecessary and excessive force against him and later filed a false report, and that Officer Montoya filed a false report regarding his search of appellant's cell. The court found good cause to hold an in-camera hearing to review

7

responsive records for every officer except Officer Montoya.[2] Following the in-camera hearing, the court ordered disclosure of certain information to appellant's court-appointed investigator.

### 2. Analysis

A criminal defendant is entitled to the discovery of confidential law enforcement personnel records if the information contained therein is relevant to his ability to defend against the charge. (*Pitchess*, *supra*, 11 Cal.3d at 537-538; Pen. Code, §§ 832.7, 832.8; Evid. Code, §§ 1043-1045.) To obtain those records, the defendant must submit an affidavit showing good cause for the discovery. (Evid. Code, § 1043, subd. (b)(3).) Discoverable information is "limited to instances of . . . misconduct related to the misconduct asserted by the defendant." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021; see also *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021 ["documentation of past officer misconduct which is similar to the misconduct alleged by defendant in the pending litigation is relevant and therefore subject to discovery" (italics omitted)].)

"'When a defendant shows good cause for the discovery of information in an officer's personnel records, the trial court must examine the records . . . to determine if any information should be disclosed.'" (*People v. Anderson* (2018)

---

[2]     Appellant does not challenge the court's decision not to review Officer Montoya's personnel records.

5 Cal.5th 372, 391.) "'[T]o protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera . . . , and the transcript of the in camera hearing and all copies of the documents should be sealed.'" (*Ibid.*)

An appellate court examines the record made by the trial court "to determine whether the trial court abused its discretion in denying a defendant's motion for disclosure of . . . personnel records." (*People v. Prince* (2007) 40 Cal.4th 1179, 1285; accord, *People v. Samayoa* (1997) 15 Cal.4th 795, 827 ["Trial courts are granted wide discretion when ruling on motions to discover . . . officer personnel records"].) At appellant's request, we have reviewed the sealed transcript of the in-camera hearing and conclude that the trial court did not abuse its discretion in determining what information was discoverable.[3]

## B. Challenges to the Conviction

Appellant mounts several challenges to his conviction, arguing the court erred in: (1) excluding proffered testimony regarding the officers' prior misconduct; (2) denying a mid-

---

[3] Appellant urges us to consider changes to disclosure law made by the recently enacted Senate Bill No. 16 (2020-2021 Reg. Sess.; SB 16.), which he contends applies retroactively to his case. Among other changes, SB 16 removed a statutory time limit on incidents subject to disclosure. (Legis. Counsel's Dig., Sen. Bill No. 16.) We need not decide whether SB 16 applies retroactively, as it would not affect our conclusion regarding the trial court's ruling on appellant's disclosure request.

trial continuance to allow him to secure the presence of certain witnesses; and (3) refusing to instruct the jury on excessive force and self-defense. He further contends the cumulative prejudicial effect of these alleged errors warrants reversal. As explained below, we find no reversible error.

## 1. The Exclusion of Proffered Testimony regarding the Officers' Alleged Prior Misconduct

### a. Background

After appellant's investigator received the court-ordered disclosure of certain information regarding prior incidents involving the officers, appellant provided witness statements for four witnesses: state prison inmates Horatio Kimbrough, Rigoberto Salido, James Fisher, and Lawrence Jones.[4] Kimbrough, Salido, and Lawrence's proposed testimony concerned allegations of prior instances of misconduct involving Officer Gollette, whereas Fisher's proposed testimony related to allegations of prior misconduct by Officer Enriquez. The prosecution filed a motion in limine to exclude the proffered testimony, arguing that it was unduly prejudicial.

Appellant opposed the prosecution's motion. Initially, he claimed in his written opposition that the proffered testimony was necessary to support his theory of self-defense, and would establish his reasonable fear of

---

[4] Because appellant and Lawrence share a last name, we use Lawrence's first name to avoid confusion.

Officer Gollette. At the hearing on the motion, shortly before the start of trial, appellant denied that he ever "struck," "harm[ed]," or even "resisted" the officers, but after the court noted that these assertions did not support a claim of self-defense, appellant reverted to claiming that he had defended himself against the officers. Appellant told the court that he wanted "to show that there's an ongoing issue with Gollette," and suggested that the inmate witnesses' testimony regarding specific instances of prior misconduct by the officers was relevant to his state of mind.

In response to the court's questioning regarding his prior knowledge of the particular instances, appellant related that at the time of his alleged crimes, he was aware of Fisher's allegations against Officer Enriquez, and had personally spoken with Fisher about the relevant incident. He was unaware of either Kimbrough's incident with Officer Gollette, or the incident involving Salido, which occurred after appellant's alleged offenses.

After the prosecutor argued that the proffered testimony was inadmissible propensity evidence under Evidence Code section 1101, the trial court noted that Evidence Code section 1103 permitted the admission of propensity evidence concerning the victim of the offense. However, the court further observed that Officer Gollette, the subject of proposed testimony by Kimbrough, Salido, and Lawrence, was not a victim of any offense with which appellant was charged.

As discussed further below, in response to the trial court's inquiry regarding the inmate witnesses' availability,

11

appellant relayed that he had not sought removal orders to secure their attendance.[5]  The court observed that the prosecution's motion could be moot if the witnesses were not available to testify, but proceeded to consider the matter.

Following its discussion with the parties, the court granted the motion to exclude the proffered testimony by Kimbrough and Salido, reasoning that (1) this was propensity evidence to which Evidence Code section 1103 did not apply because it concerned a non-victim, and (2) their testimony was not probative of appellant's state of mind at the time of his alleged offenses, as he was then unaware of the incidents involving them.  The court additionally invoked Evidence Code section 352 as a basis to exclude the testimony of these witnesses.

The court denied the motion as to Fisher, whose proffered testimony both concerned a named victim (Officer Enriquez) and was known to appellant at the time of his alleged offenses.  As to Lawrence, the court reserved its ruling at appellant's request, and stated that unless notified otherwise, it would presume appellant did not intend to present his testimony.  Appellant never notified the court that he intended to call Lawrence, and as discussed further below, he never secured Fisher's attendance at trial.  Subsequently, in discussing jury instructions with the court, appellant's counsel said he anticipated appellant would

---

[5]      As described below, the court and the prosecutor agreed that once a removal order was delivered, it typically took three weeks to bring the relevant inmate before the court.

testify that during the incident, appellant felt that he was being choked, "which caused his body to instinctively move in response to . . . the choking sensation."

### b. Analysis

The exclusion of the proposed testimony of Kimbrough and Salido provides no basis for reversal.  We review the court's evidentiary rulings for abuse of discretion.  (*People v. Smithey* (1999) 20 Cal.4th 936, 973.)  "Specifically, we will not disturb the trial court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Goldsmith* (2022) 59 Cal.4th 258, 266.)  A miscarriage of justice results only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Evidence Code section 1101 makes evidence of a person's character inadmissible when offered to prove his or her conduct on a specified occasion.  (Evid. Code, § 1101, subd. (a).)  Evidence Code section 1103, subdivision (a), provides an exception to that rule, stating, "In a criminal action, evidence of the character . . . of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character . . . ."

As the trial court noted, the proffered testimony regarding specific incidents involving inmates Kimbrough

and Salido concerned Officer Gollette, who was not a victim of the offenses with which appellant was charged. Thus, Evidence Code section 1101 precluded use of their testimony to establish that Officer Gollette used excessive force on appellant, and the exception in Evidence Code section 1103 did not apply.

Further, as the trial court explained, the incidents involving these two witnesses could not have affected appellant's state of mind at the time of the alleged offenses, as he was unaware of the incident involving Kimbrough, and the incident involving Salido had not yet occurred. (See *People v. Tafoya* (2007) 42 Cal.4th 147, 165-166 [evidence that person was dangerous was relevant to defendant's claim of self-defense only if defendant knew of person's reputation for dangerousness].)

To the extent appellant suggests he need not have had prior knowledge of Kimbrough and Salido's specific allegations because they would have provided generalized testimony regarding Officer Gollette's violent reputation -- a claim he did not make during his lengthy colloquy with the trial court -- we need not decide the issue, as any error would have been harmless. The record is undisputed that appellant had done nothing to secure the witnesses' attendance at trial. As noted, even as the trial was about to commence, appellant had not initiated the process to obtain removal orders for the inmate witnesses. Notably, appellant never called Fisher, the inmate witness he *was* permitted to call, and whose testimony concerned the victim of one of the charged offenses.

14

Moreover, under the theories appellant, and later, his counsel, presented to the court, his state of mind as to Officer Gollette was not central to the assessment of his biting of Officer Enriquez. Appellant told the court that he was "put in a chokehold and taken down to the ground," and that this was "where self-defense [came] in with Enriquez." Subsequently, appellant's counsel told the court he anticipated appellant would testify that during the incident, he felt he was being choked, which caused him to "instinctively move in response to . . . the choking sensation." If appellant had testified that he bit Officer Enriquez, either as an involuntary reaction or in an effort to defend himself, any claimed apprehension of Officer Gollette when the latter grabbed his arm would have had little bearing on his defense to the relevant biting charge.[6] Accordingly, we find no reversible error.[7]

---

[6] Appellant complains that the trial court erroneously "ruled" that he had not articulated a valid theory of self-defense. The court made no such ruling. While the court remarked that appellants' assertions that he neither struck the officers nor resisted them did not support a claim of self-defense, the exclusion of the proffered testimony of Kimbrough and Salido was not based on its assessment of appellant's intended defense. As noted, the court permitted appellant to call Fisher, whose testimony was similarly intended to support appellant's theory of self-defense.

[7] To the extent appellant purports to challenge the trial court's exclusion of the proffered testimony of Fisher and Lawrence, he misreads the record. The court denied the motion as to Fisher. As to Lawrence, at appellant's request, the court

(*Fn. is continued on the next page.*)

## 2. The Denial of a Mid-Trial Continuance

### a. Background

On October 20, 2020, during the hearing on the prosecution's motion to exclude appellant's proffered witnesses, including Fisher, the trial court asked appellant if those witnesses were available and if they had been transferred to the county's custody for the trial. Appellant replied that he had the subpoenas with him. When the court explained that the presence of prison inmates was secured through removal orders rather than by subpoenas and asked if the required process had taken place, appellant stated that it had not. In response to the court's inquiry, the courtroom clerk stated that it would take at least 24 hours to get a removal order to the relevant authority, but the prosecutor confirmed the court's belief that it typically took three weeks to bring the inmate before the court. After the court ruled on the prosecution's motion, the parties proceeded to jury selection.

On October 28, following the close of the prosecution's case-in-chief, the prosecutor informed the court that although appellant had asked the prosecution to bring Officer Gollette to court for appellant's case, the officer was not present because neither side had subpoenaed him. After appellant, who was still representing himself, called and examined three other officers, he informed the court that one

reserved a ruling pending further action by appellant, yet appellant never raised the subject of Lawrence's testimony again.

16

week earlier, he had prepared "subpoenas" for his investigator to deliver, that his investigator had just received them that day, and that he was "waiting on him." The court responded: "Well, that's a problem 'cause my guess is there's no way he could have had [the witnesses] served and here now. [¶]. . .[¶] . . . The court can't interfere because that's not my place. You're representing yourself. . . . [W]e cannot delay the trial because it wasn't until today that you're trying to serve your subpoenas."

Shortly after this discussion, appellant asked for his standby counsel to take over his representation. Counsel then assumed appellant's representation, calling and questioning multiple witnesses. Neither Fisher nor Officer Gollette testified. At sentencing, appellant's counsel mentioned that after he took over appellant's representation, he made no effort to call Officer Gollette. Counsel then agreed with the court's statement that the officer was available, and that counsel "chose not to call him" because he intended to point to the prosecution's failure to call "the most obvious person."

### b. Analysis

Construing the trial court's statement that it would not "delay the trial" as a denial of a continuance, we conclude appellant has shown no reversible error. "'A motion for continuance should be granted only on a showing of good cause. [Citation.]' [Citation.] To support a continuance motion to secure a witness's attendance at trial, a showing of good cause requires a demonstration, among other things,

17

that the defendant exercised due diligence to secure the witness's attendance." (*People v. Wilson* (2005) 36 Cal.4th 309, 352 (*Wilson*).) A claim that the denial of a continuance violated the defendant's constitutional rights is subject to a similar requirement. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 1039-1040 ["if the defendant cannot show he or she has been diligent in securing the attendance of witnesses, . . . the court's ruling denying a continuance does not support a claim of error under the federal Constitution"].) "The standard of review for a trial court's denial of a continuance motion is abuse of discretion." (*Wilson, supra,* at 352.)

Appellant contends a continuance was necessary for him to call Fisher and Officer Gollette. It was appellant, however, who failed to exercise due diligence in attempting to secure Fisher's attendance. The record does not reflect that appellant ever initiated the process to have Fisher, a state prison inmate, transported to the court. As the trial court noted, securing a state inmate's attendance required a removal order. (See *People v. Garcia* (2008) 160 Cal.App.4th 124, 126 ["Under our law, a witness incarcerated in state prison is brought to a criminal court to testify by means of a removal order issued pursuant to Penal Code section 2621 or 1567"]; Sink, California Subpoena Handbook (Dec. 2022) § 2:2 ["The testimony of a state prisoner is obtainable only by court order . . .; it is not obtainable by subpoena . . ."].) Yet appellant reported only that he had prepared "subpoenas" for his appointed investigator to deliver, and the record does

18

not reflect whether Fisher was even included in those subpoenas.

Moreover, even assuming appellant's documents included a removal order for Fisher, he reported preparing those documents one week before October 28, meaning after the start of trial. This was a particularly late effort given the potentially lengthy process required to bring a state inmate before the court. Appellant faults "the difficulties caused by the pandemic, the unavailability of [his] court-appointed investigator, [and] the delayed release of witness names" for his delay in attempting to secure Fisher's appearance at trial. But by his own admission, appellant was aware of Fisher's identity and his allegations against Officer Enriquez long before the trial. Thus, appellant's late effort to secure Fisher's attendance fell far short of establishing due diligence. (See *Wilson*, *supra*, 36 Cal.4th at 352 [capital defendant did not exercise due diligence in attempting to obtain impeachment witnesses for penalty phase of trial where he failed to subpoena them despite knowing about prosecution witnesses' testimony long before penalty phase]; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1035-1036 [defendant failed to show due diligence where counsel had two years to prepare for trial and announced ready for trial, but then requested continuance to locate witness]; see also Levenson & Ricciardulli, Cal. Criminal Procedure (The Rutter Group 2022) § 21:3 ["Waiting until the morning of trial to try to locate a witness is not due diligence"].) To the extent appellant did not seek to ensure Fisher's attendance in a timely fashion because he

had been unaware of the necessary process, we note that self-represented defendants are "held to the same standard of knowledge of law and procedure as is an attorney." (*People v. Clark* (1990) 50 Cal.3d 583, 625.)

As for Officer Gollette, appellant's counsel confirmed at sentencing that after stepping in to represent appellant, he chose not to call the officer for tactical reasons, though counsel knew he was available. Because nothing precluded appellant from calling Officer Gollette, he cannot establish prejudice from the denial of a continuance, even assuming any error. (See *People v. Zapien* (1993) 4 Cal.4th 929, 972 [denial of continuance not reversible absent prejudice to defendant].)

### 3. The Denial of Instructions on Excessive Force and Self-Defense

#### a. Background

While discussing jury instructions with the trial court during appellant's case-in-chief, appellant's counsel asked the court if it would instruct the jury with CALCRIM Nos. 2671 (Lawful Performance: Custodial Officer) and 3470 (Right to Self-Defense or Defense of Another

(Non-Homicide)) if appellant chose not to testify.[8] The court responded that it would not.[9]

[8]     CALCRIM No. 2671 provides: "The People have the burden of proving beyond a reasonable doubt that [the custodial officer] was lawfully performing (his/her) duties as a custodial officer. . . . [¶] A custodial officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force in his or her duties. [¶] . . . [¶] If a custodial officer uses unreasonable or excessive force while (restraining a person/ [or] overcoming a person's resistance . . .), that person may lawfully use reasonable force to defend himself or herself."

CALCRIM No. 3470 provides, in relevant part: "Self-defense is a defense to <insert list of pertinent crimes charged>. The defendant is not guilty of [those crimes] if (he/she) used force against the other person in lawful [self-defense]. The defendant acted in lawful [self-defense] if: [¶] 1. The defendant reasonably believed that (he/she . . .) was in imminent danger of suffering bodily injury [or was in imminent danger of being touched unlawfully]; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; [¶] AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger."

[9]     In discussing appellant's defense theory, his counsel told the trial court that he anticipated appellant would testify that "he never affirmatively tried to strike or headbutt or kick or bite a corrections officer" but "was feeling pain, physical pain being inflicted on him[,] as well as the possibility of being suffocated, being choked, which caused his body to instinctively move in response to the pain inflicted on him and the choking sensation." The court expressed doubt that self-defense would apply based on this testimony, but said it would "look at it." The court and the parties proceeded to discuss the application of self-defense to appellant's anticipated testimony, after which the court stated it did not believe the proffered testimony would support the defense, but said it would "spend some time to review it."

After consulting with appellant, counsel informed the court that appellant would not testify, but urged the court to grant those instructions because "depending on how [the jurors] interpret the testimony of the corrections officers, they may feel that [appellant] was acting in self-defense and that . . . the corrections officers were exceeding their lawful performance." The court denied counsel's request, finding that "there has not been substantial evidence to support that the officers were doing anything other than acting in their lawful performance of their duty that would warrant the 2671 instruction or . . . [that] there's an issue of self-defense . . . ." Subsequently, in instructing the jury on the elements of battery on a non-confined person by a prisoner under CALCRIM No. 2723, the trial court omitted a bracketed portion of the instruction relating to correctional officers' use of excessive force.[10]

### b. Analysis

The trial court correctly refused to instruct the jury on self-defense and excessive force. "A trial court must give a requested instruction only if it is supported by substantial evidence, that is, evidence sufficient to deserve jury consideration." (*People v. Marshall* (1997) 15 Cal.4th 1,

---

[10] The relevant omitted portion of CALCRIM No. 2723 states: "A custodial officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force in his or her duties. . . ."

39-40.) "'[U]nsupported theories should not be presented to the jury.'" (*Id.* at 40.)

The evidence at appellant's trial did not support instructions on excessive force and self-defense. The officers testified that after being tasked with searching appellant's cell, they located appellant by the supply room. Officer Gollette instructed appellant to submit to handcuffs, which was standard procedure when an inmate's cell was searched. When appellant did not comply and attempted to go into the supply room, Officer Gollette grabbed his arm. Appellant attempted to break away, twisting and turning his body, despite the officers' repeated instructions that he stop resisting. Officer Enriquez then brought appellant to the ground, as it was safer. Appellant's head hit the ground, but he continued to resist the officers. The officers continued to try to restrain appellant, and Officer Enriquez was holding appellant's right hand close to appellant's chin, when appellant bit the officer's hand.

Nothing in this evidence supported a claim of excessive force on the officers' part or provided a basis for a claim of self-defense. There was no evidence that officers struck appellant or employed any amount of force unnecessarily. The evidence at trial showed only that the officers used sufficient force to stop and restrain a resisting inmate, as they were entitled to do. (Cf. *Golick v. State of California* (2022) 82 Cal.App.5th 1127, 1138-1139 [""the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" [Citation.] Thus, under California law,

23

a peace officer ""'may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance"''"]; *Lawrence v. Kenosha County* (7th Cir. 2004) 391 F.3d 837, 843 [where plaintiff refused to produce his driver's license at officer's request and his vehicle was in motion as he argued with officer, it was not excessive force for officer to grab plaintiff's arm and attempt to pull him out of vehicle].)  Nothing in the facts presented at trial could have justified appellant's biting of Officer Enriquez.

Appellant claims the evidence supported a finding that the officers did not even announce their presence before Officer Gollette "initiated the physical encounter" with him. We disagree.  In the testimony appellant cites, Officer Carreon testified that neither he nor Officer Gollette announced their presence before "getting to [appellant]." Officer Carreon also testified that either he or Officer Gollette had asked appellant to approach them or otherwise addressed him before Officer Gollette grabbed his arm.  And after refreshing his recollection with his written report, Officer Carreon testified that before taking hold of appellant, Officer Gollette had told appellant to turn around and submit to handcuffs.  There was no support for a finding that the officers had pounced on appellant without warning. That Officer Carreon's testimony differed in some respects from his testimony at the preliminary hearing, as appellant emphasizes, similarly fails to support a claim of excessive force by the officers.  (See *People v. Ponce* (1996) 44 Cal.App.4th 1380, 1389-1390 [inconsistencies in testimony of

24

victim or officers did not constitute substantial evidence that defendant had been framed].)  Accordingly, the trial court did not err in refusing to instruct the jury on excessive force and self-defense.[11]

## C. *Challenges to the Sentence*

Challenging his third-strike sentence of 25 years to life, appellant claims the trial court abused its discretion in denying his *Romero* motion in part.  Alternatively, he contends his sentence is unconstitutionally excessive.  As explained below, we find no abuse of discretion in the trial court's refusal to strike two of appellant's prior strikes, and no constitutional infirmity in appellant's sentence.

### 1. Background

In its sentencing memorandum, the prosecution noted appellant was facing a mandatory third-strike sentence of 25 years to life, and argued that the circumstances warranted

---

[11]  Appellant mistakenly asserts that the trial court ruled it would not instruct on self-defense unless he testified that his movements during the incident were an intentional act of defense.  While expressing skepticism regarding the validity of appellant's proffered theory, the court said that it would consider the issue, and made no final ruling whether appellant's anticipated testimony, as presented by counsel, would support a self-defense instruction.

Because any error at appellant's trial had no prejudicial tendency, we need not address his additional contention that the cumulative prejudicial effect of the errors requires reversal.

the application of the Three Strikes Law in his case.[12]  In detailing appellant's aggravating factors, the prosecution noted his lengthy criminal history: alongside multiple property offenses and parole violations, appellant committed misdemeanor burglary and misdemeanor battery on a domestic partner in 1999, three felony burglaries in 2000, second degree murder in 2005 -- one month after he was released from prison for prior offenses -- and firearm-related offenses and resisting an officer in 2006.  Appellant was serving concurrent sentences of 48 years to life and 103 years to life at the time of his current offense.  The prosecution also pointed to appellant's multiple disciplinary violations during his current incarceration, which began in 2009.  Finally, the prosecution asserted that while acting as his own attorney, appellant made false statements to the court when he stated that he never struck or used physical force against any of the officers.

Attached as exhibits to the sentencing memorandum were, inter alia, police reports and the appellate opinion relating to appellant's murder conviction.  As relevant here, the exhibits revealed that appellant was a member of a White supremacist prison gang, and that before the murder, the gang had deemed appellant's victim a snitch and placed a "hit" on him.

---

[12]     The prosecution later moved to dismiss appellant's prior strikes based on Los Angeles District Attorney's Special Directive 20-08, but in response to the court's inquiry, the prosecutor stated there were no specific facts relating to appellant's background that would warrant striking his priors.

Appellant's counsel filed a *Romero* motion, asking the court to strike his prior strikes because they were remote in time. At the sentencing hearing, counsel highlighted appellant's relative youth at the time of his prior offenses -- appellant committed the felony burglaries when he was 19 years old, the murder when he was 23, and the firearm-related offenses and resisting an officer when he was 25. Counsel also emphasized that appellant had caused Officer Enriquez only a minor injury and argued that a third-strike sentence would be unconstitutionally excessive.

The court granted appellant's *Romero* motion in part, striking two of the three felony burglaries, which were all committed on the same day. However, the court declined to strike the convictions for the remaining felony burglary and the murder, finding that appellant was not outside the spirit of the Three Strikes Law. Rejecting the notion that appellant's current offense was de minimis, the court stressed the dangers involved in an inmate's use of force against officers, potentially drawing in other inmates and officers and creating significant risks of injury to all involved. The court then surveyed appellant's criminal history, noted the circumstances surrounding his commission of murder in 2005, and stated that appellant was precisely the kind of defendant for whom the Three Strikes Law was designed.

During a colloquy with appellant's counsel, who argued the officers had instigated the incident, the court stated that the jury had found the officers to have been engaged in a lawful act at the time of the incident. The court also

27

expressed its view that at various times appellant had been dishonest with the court, denying he ever resisted officers' efforts to place him in handcuffs, stating he never "harmed" any officer, and denying using physical force against the officers. After denying appellant's *Romero* motion in part, the court imposed the mandatory third-strike sentence.

## 2. Analysis

### a. Denial in Part of *Romero* Motion

The trial court acted within its discretion in denying in part appellant's *Romero* motion. A trial court abuses its discretion by declining to strike a prior strike only if the defendant so clearly falls outside the spirit of the three strikes scheme that no reasonable person could disagree. (See *People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony I*).) Only extraordinary circumstances warrant a finding that a defendant falls outside the spirit of the three strikes scheme. (*Ibid.*) Accordingly, "the circumstances where no reasonable people could disagree that the [defendant] falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Id.* at 378.)

The circumstances here were not so extraordinary. Appellant had a lengthy criminal history that included both property and violent offenses, with generally increasing severity, as well as multiple parole violations. Just one month after being released from custody for prior offenses, appellant murdered a person targeted by appellant's White supremacist prison gang. While serving a life sentence for

28

this and other offenses, appellant committed multiple disciplinary violations, as well as his present offense, in which he bit a correctional officer attempting to restrain him. Given these circumstances, the trial court reasonably concluded appellant did not fall outside the spirit of the three strikes scheme. (See *Carmony I, supra,* 33 Cal.4th at 376.)

Appellant contends the court erred in denying his motion because it: (a) incorrectly stated that the jury found the officers' actions were lawful; (b) wrongly found that he lied in claiming he never struck the officers; (c) improperly relied on hearsay regarding his history of criminal and wrongful conduct; and (d) failed to consider his youth at the time of his prior offenses. We find none of these contentions persuasive.

First, appellant notes that, contrary to the trial court's statement, the jury did not find that the officers' actions were lawful, as the jury was not asked to make any finding on the issue of excessive force. But as discussed above, the evidence did not support a finding that the officers used excessive force against appellant. Appellant offers no explanation how the court's imprecise reference to a finding by the jury might have prejudiced him under these circumstances. (See *People v. Mena* (2012) 54 Cal.4th 146, 162 [no reversal absent showing that it is reasonably probable more favorable result would have been obtained absent error].)

Second, appellant asserts that, contrary to the trial court's finding, his repeated insistence that he never struck

any officer was proved true at trial.  We disagree.  As the court noted, appellant had at various times denied any use of force against the officers, denied "harm[ing]" any officer, and denied resisting efforts to place him in handcuffs.  Given the jury's finding that appellant assaulted Officer Enriquez, who was attempting to restrain him, by biting the officer's hand, the court had ample basis to discredit appellant's assertions.

Third, appellant claims the exhibits to the People's sentencing memorandum constituted hearsay and were thus inadmissible.  Initially, we observe that appellant did not object to the relevant evidence below, and he therefore has forfeited this claim on appeal.  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 409 [failure to object to challenged evidence below constitutes forfeiture].)  Moreover, at a sentencing proceeding, the court may consider hearsay if there is a basis for believing the information is reliable.  (*People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095.)  Appellant offers no argument that the information contained in the documents attached to the prosecution's sentencing memorandum was unreliable.

Finally, appellant contends the court failed to consider his youth at the time of his prior offenses.  He offers no support for this assertion.  At the sentencing hearing, defense counsel highlighted appellant's relative youth at the time of his prior offenses, and nothing suggests the court did not take this factor into account.  That a court focused its explanatory comments on certain aggravating factors does not suggest it considered only those factors.  (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)  "While a court must

explain its reasons for striking a prior [citations], no similar requirement applies when a court declines to strike a prior [citation]." (*In re Large* (2007) 41 Cal.4th 538, 550.) The court was not compelled to find appellant's relative youth at the time of his priors dispositive, particularly given the severity of his prior offenses and his continued violations while in prison, which strongly suggested he "did not add maturity to age." (*People v. Williams* (1998) 17 Cal.4th 148, 163 [trial court abused its discretion in granting *Romero* relief, despite defendant's youth at time of prior strikes, because defendant persisted in criminal activity].)

### b. Constitutionality of the Sentence

We reject appellant's contention that his sentence was unconstitutionally excessive. Under the California Constitution, a punishment is unconstitutionally excessive if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."[13] (*In re Lynch* (1972) 8 Cal.3d 410, 424.) In reviewing a statutorily mandated sentence for excessiveness, a reviewing court must grant ""'the broadest discretion possible'" [citation] to the legislative judgment respecting appropriate punishment," accounting for the fact

---

[13] Although appellant asserts both federal and state constitutional challenges to his sentence, we analyze his claims exclusively under the California Constitution, as he does not contend that the federal Constitution offers him any additional protection.

that "'[t]he choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will . . . ." (*In re Palmer* (2021) 10 Cal.5th 959, 972 (*Palmer*).) Thus, "[o]nly in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.)

Our Supreme Court "has distilled three analytical techniques to aid [the] deferential review of excessiveness claims: (1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Palmer, supra,* 10 Cal.5th at 973.) Appellant's arguments focus only on the first of these techniques, and we therefore do the same in our analysis.[14]

---

[14] In his opening brief, appellant compares his sentence to the ordinary punishments for his offense of battery on a non-confined person by a prisoner (§ 4501.5 [two, three, or four years]), and the lesser offenses of battery on a custodial officer (§ 243, subd. (c)(1) [16 months, or two or three years]) and simple battery (§ 243, subd. (a) [maximum of six months]). These comparisons are inapposite, as they do not concern more severe offenses (see *Palmer, supra,* 10 Cal.5th at 973), and they contrast appellant's
(*Fn. is continued on the next page.*)

Neither the nature of the offense nor appellant's circumstances suggest his sentence is so disproportionate as to shock the conscience. Initially, we do not share appellant's view of his current offense as "relatively minor." Appellant bit a correctional officer while resisting officers' efforts to restrain him, offering such physical resistance that five officers were required to subdue him.[15] Moreover, "'the three strikes law punishes not only [appellant's] current offenses, but also his recidivism.'" (*Sullivan*, *supra*, 151 Cal.App.4th at 571.) "'California statutes imposing more severe punishment on habitual criminals have long withstood constitutional challenge.'" (*Ibid*.) As noted, appellant's lengthy criminal history included a murder

third-strike sentence with the punishments applicable to persons who suffered no prior strike. (See *People v. Sullivan* (2007) 151 Cal.App.4th 524, 571 (*Sullivan*) ["'Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals,' we cannot logically compare appellant's 'punishment for his [current offenses,] which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons'"].)

[15]  *People v. Carmony* (2005) 127 Cal.App.4th 1066 (*Carmony II*), cited by appellant, is distinguishable. There, the Court of Appeal held unconstitutional a 25-year-to-life sentence under the Three Strikes Law for violation of sex offender registration requirements, where the defendant "had properly registered his current residential address and demonstrated a good faith attempt to comply with the sex offender registration law[,] but due to a negligent oversight had failed to update his registration within five working days of his birthday." (*In re Coley* (2012) 55 Cal.4th 524, 531 [discussing *Carmony II*].)

conviction, and even the life sentences he was serving at the time of his current offense proved insufficient to deter him from reoffending.

Appellant stresses his prior offenses' remoteness and his relative youth at the time. But neither factor establishes that his sentence is unconstitutional. That since 2006, appellant committed only the current offense -- as well as multiple disciplinary violations in prison -- is unremarkable, given that he has been continuously incarcerated since 2009. (Cf. *People v. Vasquez* (2021) 72 Cal.App.5th 374, 390 [reversing trial court's striking of prior strike, and stating, "In analyzing whether a defendant's prior criminal conduct was 'remote,' a trial court should consider whether the defendant 'was incarcerated a substantial part of the intervening time and thus had little or no opportunity to commit' additional crimes"].) As to his age at the time of his priors, appellant cites no authority, and we are aware of none, holding that the Legislature may not treat an offender as a recidivist if the offender committed his prior offenses -- here, burglary, murder, and other offenses -- when he was a young adult. While special constitutional rules apply to the punishment of juveniles, appellant was not a juvenile at the time of his current offense or his priors. (*People v. Edwards* (2019) 34 Cal.App.5th 183, 186, 190-192 [upholding as constitutional sentences of 95 years to life and 129 years to life for 19-year-old sex offenders; "a defendant's 18th birthday marks a bright line" (*id.* at 190)].) Accordingly, appellant's sentence was not unconstitutionally excessive.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                              MANELLA, P. J.

We concur:

CURREY, J.

STONE, J.*

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.